IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CITY OF CARLSBAD,**

    Plaintiff,

    v.                                              Civ. No. 12-080 BB-CG

**I&W, Inc., B&E, Inc., MID-CONTINENT
CASUALTY COMPANY, ADMIRAL
INSURANCE COMPANY,** and **LINDA BLOOM
BANKRUPTCY TRUSTEE For I&W**,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the City's motion to remand and for an award of attorney's fees and costs. Doc. 12. Having read the briefs and the relevant caselaw, the Court will grant the motion to remand, but will deny the motion for attorney's fees and costs.

### Facts and Procedure

This case concerns a solution mining operation on property owned first by B&E, Inc. ("B&E") and then by I&W, Inc. ("I&W").[1] The property is located within the City of Carlsbad (the "City") near an irrigation ditch, a church, the Circle S feed store, and a mobile-home park. The operation includes two underground wells, known as the Eugenie No. 1 and 2 wells, which were operated pursuant to a water discharge permit issued by the New Mexico Oil Conservation Division ("OCD"). According to the amended complaint, B&E operated the wells between 1978

---

[1] In a solution mining operation, a well is drilled into the salt formation strata. *See* Doc. 12, Ex. 1. Fresh water is then pumped into the well, where it dissolves the salt and creates brine water. The brine water is subsequently pumped out of the well and often sold to the oil and gas industry. The stability of the resultant underground salt cavern depends on the depth, width, and strength of the materials above the void.

and 1995.  Subsequently, I&W acquired the property in 1995 and operated the facility until sometime after April, 2009.

On July 16, 2008, a brine well located southeast of Artesia collapsed, forming a sinkhole several hundred feet across.  The well had similar characteristics to the Eugenie wells in terms of geology and production history.  Accordingly, OCD immediately began monitoring I&W's operation in the City.  On July 18, concerned about the real and imminent danger of collapse at the Eugenie wells, OCD recommended that I&W cease producing brine at the site.  Four days later, in accordance with the OCD's direction, I&W ceased production.

On November 3, 2008, a second brine well in the Loco Hills area collapsed, resulting in the closure of a road and the loss of heavy equipment.  In response, OCD issued a moratorium on new brine wells in the state.  OCD also continued gathering information about the risk of collapses from existing wells in New Mexico.

The following year, on March 26 and 27, OCD hosted a public conference where regulators, experts, and industry convened to discuss overall brine well safety.  Doc. 12, Ex. 1.  At this meeting, a consensus developed regarding the high probability of a collapse at the Eugenie wells owned by I&W.  *Id.*  Accordingly, beginning in April 2009, OCD began briefing emergency response organizations, the local government, and the Department of Transportation and Environment about the potential for a collapse at the Eugenie wells.  That same month, OCD contracted with an engineering firm to characterize the brine cavern and install automated systems to detect ground movement.  The exact size and depth of the cavern have not yet been determined.  Doc. 1, Ex. 26, ¶ 21.

Almost a year later, on January 21, 2010, the City filed a complaint against I&W in state district court.  Doc. 1, Ex. 3.  The City sought, among other things, a preliminary and permanent

injunction requiring I&W to pay for ongoing costs associated with monitoring the two Eugenie wells. Following an evidentiary hearing, the court entered findings of fact stating that the wells had been operated since 1978, that I&W's conduct created the underground caverns, and that the caverns presented an imminent threat of harm to the public. Doc. 1, Ex. 18, ¶¶ 4, 12, 18. Accordingly, the court entered a preliminary injunction requiring I&W to pay for monitoring costs and reimburse the City for a characterization study of the wells. *Id.*

Shortly thereafter, I&W filed a petition for bankruptcy in federal bankruptcy court, triggering an automatic stay of the proceedings in state court. The federal bankruptcy court appointed a bankruptcy trustee for I&W, Linda Bloom (the "Trustee"). Upon the City's petition, the bankruptcy court lifted the automatic stay on January 25, 2012. *See* Doc. 1, Ex. 2. The order lifting the stay permitted the City to add the Trustee as a "Defendant nominal party" to the state court proceeding. *Id.* at ¶ 4. While the order provided that I&W and the Trustee would be bound by the judgment in state court, it specifically stated that the City would only be able to seek "collection of the judgment against the available insurance and not against the Trustee or the bankruptcy estate." *Id.* at ¶ 9. Put another way, the order barred the City from seeking monetary relief against the Trustee or the bankruptcy estate. *Id.* at ¶ 11.

On December 15, 2011, the City was granted leave to amend its complaint to include the Trustee, B&E, Mid-Continent Casualty Company ("MCC"), and Admiral Insurance Company ("Admiral") as defendants in the state court proceeding. Doc. 1, Ex. 25. The Amended Complaint alleges that I&W's salt mining operation created an underground cavern, which could collapse, thereby causing catastrophic damages to water resources, property and possibly human life. Doc. 1, Ex. 26, ¶ 32. The Amended Complaint states, upon information and belief, that the cost of mitigation, abatement, and damages could exceed $50 million. *Id.* at ¶ 36. It further

seeks declaratory judgment establishing that the insurance policies issued by MCC and Admiral afford coverage for the property damage caused by I&W.[2]

Admiralty filed an amended answer, which included a cross-claim for declaratory judgment against I&W and a counterclaim for declaratory judgment against the City. Doc. 16. Specifically, Admiral seeks a declaration that, under its umbrella/excess insurance policy with I&W, it does not owe a duty to defend or indemnify I&W against the claims asserted by the City.

MCC then removed the action to this Court pursuant to 28 U.S.C. § 1441(a). Admiral joined in the removal within the thirty-day time frame set forth in 28 U.S.C. § 1446. *See* Doc. 5. None of the remaining defendants consented or otherwise joined in the removal.

Following removal, the City filed the instant motion to remand the matter to state court. First, the City argues that MCC has failed to carry its burden of demonstrating that B&E was fraudulently joined. Accordingly, the City argues that B&E's New Mexico citizenship defeats complete diversity among the parties. Additionally, the City argues that both the Trustee and I&W are proper parties for purposes of analyzing diversity jurisdiction; thus, their New Mexico citizenship further defeats complete diversity among the parties. Finally, the City argues that the removal was procedurally deficient because MCC failed to obtain the consent of all the parties to removal as required by the unanimity rule clearly set forth in *State Farm Fire & Casualty Co. v. Dunn-Edwards Corp.*, 728 F. Supp. 2d 1273, 1275 (D.N.M. 2010) (Black, J.). Therefore, the City urges the Court to remand the case to state court. Pursuant to 28 U.S.C. § 1447(c), the City

---

[2] MCC issued a Commercial General Liability policy to I&W from June 1, 2000 to June 1, 2001. The policy was renewed each year through 2009. MCC also issued I&W a Commercial Excess Policy that was in place through June 1, 2005. Admiral, in turn, issued an umbrella/excess policy to I&W that was in place from June, 2005 until June, 2009.

seeks attorney's fees and costs incurred as a result of what it alleges to be an objectively unreasonable removal.

Both MCC and Admiral oppose the motion to remand. If remand is, however, granted, Admiral requests that this Court sever the insurance coverage issues involving it, the City, and MCC. Doc. 23. Admiral further requests that this Court then consolidate the insurance coverage issues with a similar case involving MCC currently before the Honorable Judge William Johnson, *Mid-Continental Casualty Co. v. I&W, Inc.*, 11cv329.

## Standard of Review

Under 28 U.S.C. § 1441(a), an action may be removed to federal district court if the action is one over which the district court would have had original jurisdiction. There is a presumption against removal jurisdiction. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Thus, the removing parties, in this case MCC and Admiral, bear the burden of establishing the requirements for federal jurisdiction. *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

## Analysis

**I. Diversity Jurisdiction**

The Notice of Removal premises federal jurisdiction on diversity of citizenship, 28 U.S.C. § 1332(a). Under that statute, federal district courts shall have jurisdiction over a civil action between "citizens of different States," where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).[3] The Supreme Court has read 28 U.S.C. § 1332(a)(1)'s "formulation 'between . . . citizens of different States' to require complete diversity between all plaintiffs and

---

[3] It is undisputed that the amount in controversy requirement has been met in the instant case. *See* Doc. 1, Ex. 26, ¶ 36 (alleging damages that exceed $50 million).

all defendants." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 82 (2005). "Complete diversity" exists when "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Depex Reina 9 P'ship v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir. 1990).

The parties in the instant proceeding do not appear to meet the diversity of citizenship requirement. While the City is a New Mexico citizen, three defendants named in the Amended Complaint – I&W, the Trustee, and B&E – are also New Mexico citizens. To overcome the lack of complete diversity between the parties, MCC argues that (a) the City fraudulently joined B&E to defeat complete diversity, and (b) I&W and the Trustee are nominal parties whose New Mexico citizenship need not be considered for purposes of diversity jurisdiction. Doc. 1. Because complete diversity exists between the remaining parties – the City, MCC, and Admiral – MCC argues that this Court has jurisdiction.[4] The Court disagrees.

**A. Fraudulent Joinder**

MCC bears a heavy burden of proof to show fraudulent joinder of B&E. *See Sanders v. DJO, LLC*, 728 F. Supp. 2d 1200, 1202 (D.N.M. 2010) ("Defendants claiming that fraudulent joinder has occurred bear the burden of establishing that fact. This burden is a heavy one."). The Tenth Circuit has identified two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967). Either of these two circumstances must be "established with complete certainty upon undisputed

---

[4] MCC is a dual citizen of Ohio and Oklahoma; Admiral is a dual citizen of Delaware and New Jersey; and, the City is a citizen of New Mexico. Doc. 1, at ¶ 13.

evidence." *Id.* In determining whether a party was fraudulently joined, the court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted). The Court will not, however, "pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Smoot*, 378 F.2d at 882.

In two unpublished decisions, the Tenth Circuit has articulated slightly different tests for fraudulent joinder. In *Montano v. Allstate Indemnity*, the Tenth Circuit stated that the removing party must demonstrate "no possibility" that plaintiff would be able to establish a cause of action against the joined party. 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. 2000) (unpublished) (quotations omitted). Subsequently, in *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, the Tenth Circuit explained that the "court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 Fed. Appx. 911 (10th Cir. 2006) (unpublished). Although these two standards appear dissimilar, this Court has been unable to identify a distinction between the two. *See Sanders*, 728 F. Supp. 2d at 1202 n. 1 (finding no meaningful difference in the application of these two standards).[5] Thus, the issue

---

[5] Indeed, the Court has concluded that these two standards are equivalent. As the Court in *Zufelt v. Isuzu Motors Am., L.C.C.* explained:
> the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

727 F. Supp. 2d 1117, 1124 (D.N.M. 2009) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)); *see also Bio-Tec Env., LLC v. Adams*, 792 F. Supp. 2d 1208, 1216 (D.N.M. 2011); *Archuleta v. Taos Living Ctr., LLC*, 791 F. Supp. 2d 1066, 1073 (D.N.M. 2011). .

here is whether there is no reasonable basis for this Court to predict that the City might be able to recover against B&E.

In its Notice of Removal, MCC argues that the City's claims against B&E are clearly barred by the applicable statute of limitations. As MCC points out, the City's claims against B&E sound in personal injury and injury to property; thus, they are subject to the three- and four-year statutes of limitations found in NMSA 1978, §§ 37-1-8 and 37-1-4 respectively. Because the last action B&E purportedly took with respect to the City's claims occurred in 1995, MCC argues that there is no reasonable basis for this Court to conclude that the City can state a claim against B&E.

This would be true but for the fact that the City invokes the discovery rule to toll the applicable statute of limitations. The discovery rule provides that a "cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Roberts v. Southwest Cmty. Health Servs.*, 837 P.2d 442, 449 (N.M. 1992). Here, the City claims that it did not learn about the facts supporting its property claims against B&E until, at the very earliest, March 26, 2009. On that day, the OCD hosted a meeting with regulators, technical experts, and industry where a consensus developed regarding the high probability of a collapse of the Eugenie wells. Due to this public consensus, the City concedes that it was charged with constructive notice of its claims against I&W and B&E. *See Williams v. Stewart*, 112 P.3d 281, 289 (N.M. App. 2005) (noting that public information can put a plaintiff on constructive notice as to the presence of a claim). Because the Amended Complaint was filed on December 11, 2011 – within three years of the OCD's meeting – the City urges this Court to

conclude that its property claims against B&E are not barred by the applicable statute of limitations.[6]

In response, MCC argues that, as early as 2004, the City should have known about the potential threat to water resources caused by B&E's operation of the Eugenie wells. In support of this contention, MCC directs the Court to (1) documents demonstrating that the City knew about and approved B&E's operation of the Eugenie wells as far back as 1987 [*see* doc. 21, Exs. 1-8], (2) a 1988 inspection document demonstrating that the City conducted water tests at the Eugenie wells [doc. 21, Ex. 11], (3) an OCD report on brine well collapses published on June 18, 2009 [doc. 21, Ex. 13], and (4) a 2004 ordinance providing the City with authority to inspect brine wells and obtain information that I&W had submitted to OCD. If the City had exercised reasonable diligence by, for example, enforcing the 2004 ordinance, MCC argues that the City would have discovered its claims, particularly as they relate to water contamination, by 2004. MCC thus urges this Court to conclude that the discovery rule does not apply as a matter of law.

MCC's arguments as to when the City should have discovered its claims against B&E raise questions of fact for a jury to decide. The statute of limitations "time period begins to run when the claimant has knowledge of sufficient facts to constitute a cause of action." *Gerke v. Romero*, 237 P.3d 111, 115 (N.M. App. 2010). The New Mexico courts have "characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn." *Williams*, 112 P.3d at 286. The circumstances are thus rare when a court can decide that a plaintiff knew or should have known about the presence of a claim as a matter of law. *Id.*

---

[6] The City only argues that the discovery rule tolls the statute of limitations for its property claims. The City does not make a similar argument with respect to its personal injury claims. Thus, the only issue before the Court is whether there is a reasonable basis for the City's property claim against B&E.

(collecting cases). "[W]here the undisputed facts show that [p]laintiffs knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law." *Brunacini v. Kavanagh*, 869 P.2d 821, 826 (N.M. App. 1993). This case does not present one of those rare circumstances where the Court can rule that the City's claims are barred as a matter of law.

Crucially, there has been no suggestion that the City had actual knowledge of its property claims against B&E prior to the OCD meetings on March 26 and 27, 2009. Instead, the parties dispute when the City *should have known*, through the exercise of reasonable diligence, about its claims against B&E. *See Williams*, 112 P.3d at 286. On this point, the Court cannot say with "complete certainty" that the City should have know about the claims against B&E at least four years prior to the filing of the Amended Complaint. *Smoot*, 378 F.2d at 882. While MCC has submitted evidence to demonstrate that the City should have known about the potential threat to groundwater posed by the Eugenie wells, it is unclear whether that knowledge should have led the City to discover that the wells were unstable and posed a threat of catastrophic collapse. Similarly, MCC fails to explain why the 2004 Ordinance should have led the City to discover its property claims against B&E. Apparently, the 2004 Ordinance, if enforced, would have provided the City with access to the information I&W submitted to the OCD. It would appear, however, that the OCD, despite its issuing of a water discharge permit to I&W, did not learn about the potential for a collapse at the Eugenie wells until July 18, 2008 when it directed I&W to cease operations. In this light, even if the City had enforced the 2004 Ordinance and obtained information from OCD regarding the risk posed by the Eugenie wells, that information would not necessarily have alerted the City to its property claims against B&E more than four-years before it filed the Complaint in state district court.

Ultimately, MCC has failed to establish with complete certainty that the City should have known about its property claims against B&E at least four years prior to the filing of this action. Rather, this remains a question of fact best left for a jury to decide. *See Williams*, 112 P.3d at 286. Accordingly, there is a reasonable basis for the Court to predict that the City might be able to recover against B&E, belying MCC's contention of fraudulent joinder.

### B. Formal or Nominal Parties

If a party has "no real interest in the controversy," *Hann v. City of Clinton, Okl. ex rel Schuetter*, 131 F.2d 978, 981 (10th Cir. 1942), the Court "must disregard" it and "rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). There is no mechanical or bright line rule for determining when a party should be viewed as merely a nominal or formal party for the purpose of diversity jurisdiction. According to the Tenth Circuit, when no relief is sought against a particular named defendant, that defendant is merely nominal. *See Becker v. Angle*, 165 F.2d 140, 142 (10th Cir. 1948). Similarly, the Eight Circuit has stated that a party "against whom no real relief is sought" may be a nominal party. *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1161 (8th Cir. 1981). Thus, the issue here is whether the City asserts any claims of wrongdoing against I&W or the Trustee.

The Amended Complaint sets forth direct causes of action against I&W. Specifically, the Amended Complaint alleges that I&W was negligent in conducting the mining solution operation and, as a result, caused a public nuisance under New Mexico statutory and common law. Doc. 1, Ex. 26, ¶¶ 41-56. The Amended Complaint seeks relief in the form of mitigation, abatement, and both monetary and punitive damages. *Id.* at ¶¶ 65-70. While the district court entered a preliminary injunction based on a finding that I&W's solution cavern constituted an imminent threat of irreparable harm, Doc. 1, Ex. 18, ¶ 18, there has yet to be a final determination of

I&W's liability.  The liability of I&W thus remains a central issue in this litigation, strongly indicating that I&W is a real party to the case.  *Becker*, 165 F.2d at 142.

Despite the direct claims against I&W, MCC argues that I&W is not a real party because it was discharged by the bankruptcy court from any monetary liability.  Other federal courts have, however, rejected this same argument.  For example, in *Monroe v. Continental Tire the Americas, LLC*, the court noted that "merely labeling [a discharged debtor] as a nominal party in the context of its bankruptcy does not render it *ipso facto* nominal under a diversity analysis without analyzing the particular facts at issue."  807 F. Supp. 2d 1129, 1133 (M.D. Fla. 2011).  The court then proceeded to explain that the plaintiff, under Florida law, was required to obtain a judgment against the discharged debtor before collecting against the debtor's insurers.  *Id.* at 1133-34.  Thus, the court held that the discharged debtor was a real party to the suit even though it was immune from liability.  *Id.* at 1134.  Other federal courts have reached a similar result based on the same line of reasoning.  *See Schuchmann v. Miraglia*, 2004 WL 2626532, at *2 (N.D. Tex. Nov. 16, 2004) (because, under Texas law, plaintiff had to obtain a judgment against debtor before pursuing claim against debtor's insurance, debtor was not a nominal party despite discharge from bankruptcy); *Stewart v. Jennings*, 2010 WL 3009536, * 2-3 (E.D. Tenn. July 28, 2010) (although defendant may not have been personally liable for debt, his alleged faulty construction work was central issue of litigation and establishing liability was necessary for plaintiff's recovery).

In the instant case, the City, much like the plaintiff in *Monroe*, must establish the liability of the discharged debtor, I&W, before it can recover against the debtor's insurers, MCC and Admiral.  This is so because, under New Mexico law, an injured third party has no claim directly against an insurance company  unless there is a contractual or legislative provision allowing it.

*See Raskob v. Sanchez*, 970 P.2d 580, 581 (N.M. 1998) (citing 7 Lee R. Russ with Thomas F. Segalla, Couch on Insurance 3d § 104:2, at 104-10 to -12 (1997)).  Here, no contractual or legislative provision appears to permit the City to bring a direct claim against I&W's insurers.[7] Accordingly, the City cannot seek collection of a judgment against MCC and Admiral in the absence of an underlying judgment against I&W.  This reality explains why the City has alleged direct causes of action against I&W.  The Court therefore concludes that I&W, despite its discharge from monetary liability, is more than a nominal party to this proceeding.

By way of contrast, the City does not need to establish the liability of the Trustee in order to pursue a judgment against MCC or Admiral.  The City has not therefore asserted any direct claims against the Trustee.  While the bankruptcy court permitted the City to add the Trustee in this proceedings, it clearly limited the Trustee's involvement to that of a "Defendant nominal party."  Doc. 1, Ex. 2, ¶ 4.[8]  Because no real relief is sought from the Trustee, the Court concludes that it is a nominal party in its role as a representative of the bankruptcy estate.  *See*, *e.g.*, *Argo Global Special Situations Fund v. Wells Fargo Bank, N.A.*, 810 F. Supp. 2d 906, 913 (D. Minn. 2011) (while relief sought necessarily went "through" trustee, plaintiffs did not seek

---

[7] MCC has failed to identify a contractual provision that would permit the City to bring a direct suit against it without first establishing the liability of I&W.  *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) (the removing party bears the burden of demonstrating that removal is proper).

[8] The bankruptcy court further stated that the Trustee may enter an appearance in this litigation, "but will not have to answer or otherwise participate in the [lawsuit.]" Doc. 1, Ex. 2, ¶ 5.  Notably, the Trustee has not asserted any claims on behalf of the bankruptcy estate, claims that could otherwise make it a real party in interest.  *See Riggs v. Aetna Life Ins. Co.*, 188 Fed. Appx. 659, 663 (10th Cir. 2006) (noting that a trustee possesses the exclusive right to assert causes of action that are part of the bankruptcy estate, and is therefore the real party in interest in such causes of action).

relief "from" trustee; hence, trustee remained a nominal party despite its role in implementing relief).

## C. Conclusion

Based on the foregoing, the Court concludes that both I&W and B&E are proper parties to the proceedings. Their New Mexico citizenship defeats complete diversity of citizenship as required by § 1332. Because the Court lacks jurisdiction, the case must be remanded. *See Penteco Corp. Ltd. Partnership—1985A v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (a "court lacking jurisdiction . . . must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking") (quotations omitted).

## II. Unanimity Rule

MCC has also failed to comply with the procedural requirements for removal. "As a creature of statute, removal comes with statutory procedures and requirements that are mandatory in nature." *McShares, Inc. v. Barry*, 979 F.Supp 1338, 1342 (D. Kan. 1997) (citations omitted). At issue here is the unanimity rule derived from 28 U.S.C. § 1446 (b)(2)(A) which requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." Simply stated, "the unanimity rule requires all served defendants to assure the court – generally by joining in the removal itself, filing their own notice of removal, or filing a notice of consent – that they consent to removal." *State Farm Fire & Cas. Co.*, 728 F. Supp. 2d at 1275. "The failure of one defendant to join in the notice renders the removal notice procedurally defective, which requires that the district court remand the case." *Brady v. Lovelace Health Plan*, 504 F. Supp. 2d 1170, 1172-73 (D.N.M. 2007). While there was previously some dissent from this requirement, Congress codified the unanimity requirement in 2011. *See* 28

U.S.C. § 1446(b)(2)(B) ("Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal.").

There are two well-recognized exceptions to the unanimity rule. First, a defendant who has not yet been served with process is not required to join in the removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41 (1939). Second, "a nominal or formal party is not required to join in the petition for removal." *Brady*, 504 F. Supp. 2d at 1173; *Scheall v. Ingram*, 930 F. Supp. 1448, 1449 (D. Colo. 1996). The removing party has the burden under 28 U.S.C. § 1446 to explain affirmatively the absence of any co-defendants in the notice of removal. *Brady*, 504 F. Supp. 2d at 1173.

In the instant case, MCC filed its notice of removal on January 25, 2012. Doc. 1. Seven days later, Admiral consented to and joined in the notice of removal. Doc. 5. However, none of the remaining defendants consented to the removal within the thirty-day removal period. The issue then is whether MCC can affirmatively explain the absence of B&E, I&W, and the Trustee's consent. *Brady*, 504 F. Supp. 2d at 1173.

It is undisputed that B&E had not been served at the time MCC filed its notice of removal. Thus, B&E's consent was not required under the unanimity rule, 28 U.S.C. § 1446(a). *See Pullman*, 305 U.S. at 540-41. MCC further argues that I&W and the Trustee are merely nominal parties; thus, their consent to the removal was not required. *See Brady*, 504 F.Supp.2d at 1173. As noted above, however, I&W is not a nominal party to this action; hence, its consent to the removal was required. MCC's failure to obtain I&W's consent violates the unanimity rule and requires a remand as set forth in this Court's precedent. *See State Farm Fire & Cas. Co.*, 728 F. Supp. 2d at 1278; *Brady*, 504 F. Supp. 2d at 1173; *see also* 28 U.S.C. § 1446(b)(2)(B).

15

**III. Severability of the Coverage Issues**

When the case is viewed in its entirety, complete diversity of citizenship does not exist between the City and the defendants. Nonetheless, rather than remanding the entire case, Admiral urges this Court to bifurcate the City's insurance-coverage claims against MCC and Admiral pursuant to Fed. R. Civ. P. 42(b). Admiral then assumes that the Court has jurisdiction over the insurance-coverage claims because they involve completely diverse parties (that is, the City, Admiral, and MCC). Thus, Admiral asks this Court to consolidate the insurance-coverage claims with the coverage issues asserted in MCC's declaratory judgment action currently before Judge Johnson in the case captioned *Mid-Continental Casualty Co. v. I&W, Inc.*, 11cv329.

Bifurcating the insurance-coverage claims does not cure the jurisdictional defect in this case. Rule 42(b) permits the bifurcation or separation of claims for trial under a format in which "all claims remain[] part of one single action which would result in a single judgment." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991). That is, Rule 42 allows the separation of claims within a single action; it does not lead to separate actions. *See In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376 (J.P.M.L. 2003). For this reason, bifurcation does not alter the composition of the parties to the action. *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011). Accordingly, in order to determine whether diversity of citizenship exists, the court must analyze the citizenship of all of the parties to the case, not just those parties to the bifurcated claim.

Here, Admiral has requested a bifurcation of the insurance-coverage issues under Rule 42. Even assuming the Court granted Admiral's request to bifurcate, it would not alter the composition of the parties. Accordingly, the Court would still lack jurisdiction due to the lack of complete diversity amongst the parties. *See Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 999

(S.D. Ill. 2007) (diversity was not complete despite state court's order to bifurcate claims against non-diverse parties); *Miller v. Fulton*, 113 F. Supp. 2d 1035, 1039 (S.D. Miss. 2000) (court lacked diversity jurisdiction despite motion to bifurcate claims against non-diverse parties). Admiral does not cite any authority to the contrary. The Court will therefore deny Admiral's request to bifurcate the insurance coverage issues.[9]

### IV. Attorney's Fees and Costs

The City has requested an award of attorney's fees incurred as a result of the removal. *See* 28 U.S.C. § 1447(c). The language of § 1447(c) states that the award of attorney's fees rests squarely within the discretion of the district court when a remand is ordered. *Id.* ("An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.") (emphasis added); *Martin v. Franklin Capital Corp.*, 393 F.3d 1143, 1146 (10th Cir. 2004). In determining whether to make such an award, the central focus is on the propriety of removal. *See Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997); *Daleske v. Fairfield Cmtys., Inc.*, 17 F.3d 321, 324 (10th Cir. 1994). If there is little or no arguable basis for a notice of removal, then it is appropriate to award fees and costs under § 1447(c). *Excell*, 106 F.3d at 322. On the other hand, attorney's

---

[9] Admiral does not ask this Court to retain jurisdiction over its counterclaim for declaratory judgment. *See Manufacturers Cas. Ins. Co. v. Arapahoe Drilling Co.*, 267 F.2d 5, 7-8 (10th Cir.1959). Even if Admiral did make such a request, the Court would lack jurisdiction due to the lack of diversity among all the parties to the action. *See Walters v. Int'l Business Machines, Inc.*, 818 F. Supp. 1012, 1013 (S.D. Tex.1993) (analyzing jurisdiction over counter-claim by considering all of the parties to the suit, not just the counter-claiming parties); *La Gorce Country Club, Inc. v. Underwriters at Lloyd's of London*, 2009 WL 4927557, at * 2-3 (S.D. Fla. Dec. 21, 2009) (same); *Savannah Barge Line, Inc. v. Acordia Northeast, Inc.*, 2003 WL 186655, at *3 (W.D. Tenn. Jan. 16, 2003) (same).

17

fees may be denied where the defendant "had a fair basis for removing the case." *Daleske*, 17 F.3d at 324.

Based on the allegations in the Amended Complaint, there is no diversity jurisdiction that would warrant removal. For this reason, the City argues that MCC had no legitimate, fair, or objectively reasonable basis for the removal. The Court, however, disagrees.

To begin, MCC had a legitimate, albeit insufficient, basis for asserting the fraudulent joinder of B&E. On its face, the Amended Complaint alleges that the last act taken by B&E occurred in 1995, well outside of the relevant four-year statute of limitations. Doc. 1, Ex. 26, ¶ 10. What is more, the Amended Complaint omitted any facts from which it could be inferred that the discovery rule might apply to toll the claims against B&E. Accordingly, MCC was objectively reasonable in arguing that the statute of limitations barred any claims against B&E.

Similarly, it was reasonable for MCC to conclude that the Trustee was a nominal party whose citizenship could be ignored for the purposes of assessing diversity jurisdiction. After all, the Amended Complaint itself identifies the Trustee as "Defendant Nominal Party" and further goes on to concede that the Trustee was added solely as a nominal party.

Finally, the Court concludes that MCC had a reasonable basis to argue that I&W was a nominal party due to its discharge from monetary liability in the bankruptcy proceedings. While other federal courts have rejected this argument, *see, e.g., Monroe v. Continental Tire the Americas, LLC*, *supra*, 807 F. Supp. 2d 1129, the District Court of New Mexico had yet to address the issue. Accordingly, MCC had a reasonable, yet unpersuasive, basis to argue that the Court should ignore the citizenship of I&W.

In sum, MCC had a reasonable basis for urging the Court to disregard the citizenship of I&W, B&E, and the Trustee. While the Court ultimately determines that remand is required, the

Court, exercising its discretion under § 1447(c), declines to award attorney's fees and costs. *See Martin*, 393 F.3d at 1147 ("a plaintiff is not automatically entitled to attorney's fees simply because removal was ultimately determined to be improper").

Dated this 15th day of May, 2012.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE